```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION


MIKE STUCKEY                                         PLAINTIFF


VS.                              CIVIL ACTION NO. 3:07CV639TSL-JCS


MISSISSIPPI DEPARTMENT OF TRANSPORTATION
AND WILLIE HUFF                                     DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the joint motion of defendants Mississippi Department of Transportation and Willie Huff to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the separate motion of defendant Huff in his individual capacity to dismiss based on qualified immunity.[1] Plaintiff Mike Stuckey filed a response in opposition to Huff's motion, but has not responded to defendants' Rule 12(b)(6) motion. Having considered the motions, the court concludes that defendants' joint motion should be granted in part and denied in

---

[1] The Mississippi Department of Transportation also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2)(4) and (5) on the basis that the proper defendant was the Mississippi Transportation Commission, not the Mississippi Department of Transportation.  On March 24, plaintiff, having sought and obtained leave of court, filed an amended complaint substituting the Mississippi Transportation Commission for the Mississippi Department of Transportation, and naming two additional defendants, Donald Cain and Jeff Stringer.  In view of the amendment, the Rule 12(b)(2)(4) and (5) motion to dismiss is moot.

part, as set forth herein, and that Huff's motion to dismiss on the basis of qualified immunity should be granted.

Plaintiff Mike Stuckey brought this action seeking to recover damages relating to his arrest by defendant Willie Huff for "failure to comply with the lawful order of a law enforcement officer" and his subsequent prosecution for said offense. According to plaintiff's complaint, he is a watermelon farmer who sells watermelons both wholesale and directly to the public. Prior to July 2, 2006, he inquired of Simpson County Sheriff Kenneth Stringer whether it was permissible to sell watermelons at a particular location along Highway 49, south of Magee, and was told that it would be lawful for him to do so.  Accordingly, on July 2, 2006, he commenced selling watermelons at that location. On that same date, another watermelon farmer, Jeff Stringer, was selling watermelons on the same roadside, about 200 yards north of plaintiff's location.  Plaintiff alleges that Stringer contacted a friend in law enforcement, Donald Cain, to try to get plaintiff removed from the location where he was selling watermelons.  Among other things, Cain had a state trooper stop and talk to plaintiff; but the trooper told plaintiff that he was not violating the law. Then, after contacting Sheriff Lewis to complain about plaintiff, Cain, Stringer and Stringer's relatives contacted Willie Huff, Director of Law Enforcement for the Mississippi Department of Transportation, to get him to remove Stuckey from the location

where he was selling watermelons. Plaintiff alleges that Huff arrived at the location, arrested plaintiff, and transported him to the Simpson County Sheriff's Office, where plaintiff was charged with having "failed to comply with the lawful order of a law enforcement officer."

Based on these allegations, plaintiff brought this lawsuit against the Mississippi Department of Transportation and Huff, who was alleged to have been acting both individually and "under the color of law and under the color of his authority as Director of the Office of Enforcement of the Mississippi Department of Transportation." He later added Donald O'Cain and Jeff Stringer as defendants.

In his complaint and amended complaint, plaintiff alleges that the removal of him from the scene and the arrest and the prosecution of criminal charges against him constitutes a violation of his constitutional rights to due process and equal protection and to be free from unlawful and illegal arrest and seizure.[2] He alleges that as a result of defendants' actions,

> [he] has suffered serious deprivation of his liberty, denial of due process of law, invasion of privacy, grievous mental suffering, pain and suffering, violation

---

[2] Plaintiff originally filed his complaint in the Circuit Court of Simpson County, Mississippi. Defendants removed the case on the basis of federal question jurisdiction in light of plaintiff's allegation that defendants violated federal laws and statutes and the federal constitution. This court denied plaintiff's motion to remand by memorandum opinion and order dated February 4, 2008.

3

>     of the Equal Protection Clause, all in violation of the
>     laws and statutes of the United States and the State of
>     Mississippi, and the Constitutions of the State of
>     Mississippi and the United States of America.

Based on these allegations, plaintiff has included in his complaint separate counts for false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, negligence, conspiracy to violate his right to equal protection and violation of his right to equal protection.[3]

The Mississippi Transportation Commission and Huff have jointly moved to dismiss all plaintiff's state law claims on the basis that such claims are governed by the Mississippi Tort Claims Act, Miss. Code Ann. § Miss. Code Ann. § 11-46-1 et seq., and that plaintiff failed to wait ninety days to sue after submitting his notice of claim, as required by § 11-46-11(1).  They further seek dismissal on limitations grounds of what they believe to be plaintiff's federal claims for false arrest, false imprisonment, malicious prosecution and invasion of privacy.

In passing the Mississippi Tort Claims Act, the Mississippi Legislature waived sovereign "immunity of the state and its political subdivisions from claims for money damages arising out of torts of such governmental entities and the torts of their employees while acting within the course and scope of their

---

[3] Plaintiff's original complaint did not include the equal protection allegations and claim.  Those first appeared in his amended complaint, filed after the Transportation Commission and Huff had filed their motions to dismiss.

employment . . . ." Miss. Code Ann. § 11-46-5(1). The Act provides the exclusive remedy against a governmental entity or its employee, Miss. Code Ann. § 11-46-7(1), and "[a]ny claim filed against a governmental entity and its employees (for monetary relief) must be brought under [the] statutory scheme" of the Act, Lang v. Bay St. Louis/Waveland School Dist., 764 So. 2d 1234, 1236 (Miss. 1999). See Albert and Helen MA v. City of Columbus, No. 1:97CV56-B-D, 1997 WL 560941, 2 (N.D. Miss. 1979) (plaintiffs' claim for money damages for defendant's alleged violation of their rights under state constitution subject to MTCA, which "appl[ies] to any claims under state law for damages against a municipality"). Thus, plaintiff's state law tort claims for false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution and negligence are subject to the Act.

The Act sets forth procedures a claimant must follow in order to assert a claim against a government entity. The relevant rule states:

> After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity.

5

§ 11-46-11(1). The Act also requires the notice of claim to be in writing and delivered in person or by registered or certified United States mail. Miss. Code Ann. § 11-46-11(2). The Mississippi Supreme Court has held that "the ninety-day notice requirement under section 11-46-11(1) is a 'hard-edged, mandatory rule which the Court strictly enforces.'" <u>Univ. of Miss. Med. Ctr. v. Easterling</u>, 928 So. 2d 815, 819-20 (Miss. 2006) (quoting <u>Ivy v. General Motors Acceptance Corp.</u>, 612 So. 2d 1108, 1116 (Miss. 1992)). The court has also made it clear that "the responsibility to comply with the ninety-day notice requirement under Section 11-46-11(1) lies with the plaintiff," so that "[a]fter the plaintiff gives notice, he must wait the requisite ninety days before filing suit." <u>Id</u>. If he fails to do this, his case must be dismissed. <u>Id</u>. <u>Suddith v. Univ. of Southern Miss.</u>, No. 2005-CA-02130-COA, 2007 WL 2178048, 14 (Miss. Ct. App. July 31, 2007) (stating, "strict compliance to the ninety-day notice requirement of section 11-46-11(1) is mandatory) (citing <u>Easterling</u>, 928 So. 2d at 819-20).

Attached to defendants' motion in the case at bar is a letter from plaintiff's attorney purporting to give notice of plaintiff's intention to file suit. The letter is dated June 21, 2007, eighty-eight days before plaintiff's complaint was filed on September 17, 2007. It reflects that it was received by the Executive Director of the Department of Transportation on June 26,

6

2007, eighty-three days before suit was filed.[4]  Since plaintiff did not wait the requisite ninety days before filing suit, his state law claims must be dismissed.  See Hardy v. City of Senatobia, Miss., No. 2:06CV81-P-A, 2007 WL 3245163, 4 (N.D. Miss. Nov. 1, 2007) (finding that Easterling mandated dismissal of plaintiff's state law tort claims for failure to comply with 90-day notice requirement where plaintiff filed suit sixty-three days after giving notice of claim).[5]

---

[4]   The notice statute states that "[f]or purposes of determining the running of limitations periods under this chapter, service of any notice of claim or notice of denial of claim shall be effective upon delivery by the methods statutorily designated in this statute."  Miss. Code Ann. § 11-46-11(3).

[5]   The notice statute also prescribes categories of information that must be included in the notice of claim, namely, "a short and plain statement of the facts upon which the claim is based," including the circumstances that brought about the injury, the extent of the injury, the time and place the injury occurred, the names of the persons involved, the amount of money damages sought, the residence of the person making the claim at the time of the injury, and the claimant's residence at the time of filing the notice.  Here, in addition to contending that plaintiff's notice violated the ninety-day requirement, they argue that plaintiff's notice was deficient because it did not indicate that the address given for plaintiff was his address both at the time of the injury and at the time of filing the notice of claim.  It has been said that "[w]hile 'substantial compliance' in the contents of notice is sufficient, the failure to provide any information regarding even one of the categories described in section 11-46-11(2) prevents a finding of 'substantial compliance.'"  Suddith v. Univ. of Southern Miss., No. 2005-CA-02130-COA, 2007 WL 2178048, 14 (Miss. Ct. App. July 31, 2007).  However, implicit in plaintiff's notice is that the address provided was his address at all relevant times.  Thus, the notice, while untimely, was not substantively deficient.

7

Defendants submit that plaintiff's federal law claims, presumably asserted pursuant to 42 U.S.C. § 1983, for invasion of privacy, false arrest, false imprisonment and intentional infliction of emotional distress are barred by Mississippi's one-year statute of limitation, Miss. Code Ann. § 15-1-35, and case law interpreting and applying that statute.[6]  However, while there may once have been some doubt about the issue, it has been settled for more than twenty years that for all claims brought under § 1983, federal courts borrow the general personal injury limitations period of the forum state; and in Mississippi, that limitations period is three years, Miss. Code Ann. § 15-1-49(1).[7]

---

[6]   The statute provides:
All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.
Miss. Code Ann. § 15-1-35.  Although not specifically enumerated in the statute, courts have interpreted this statute to apply to claims for false arrest (which is the equivalent of "malicious arrest"), see City of Mound Bayou v. Johnson, 562 So. 2d 1212 (Miss. 1990); malicious prosecution, Jackpot Mississippi Riverboat, Inc. v. Smith, 874 So. 2d 959 (Miss. 2004); intentional infliction of emotional distress, see Citifinancial Mortg. Co., Inc. v. Washington, 967 So. 2d 16 (Miss. 2007); and invasion of privacy, McCorkle v. McCorkle, 811 So. 2d 258 (Miss. Ct. App. 2001).

[7]   From a review of the complaint, it is not clear to the court that plaintiff intended to assert these claims or his negligence and malicious prosecution claims, under federal law. It may be that his intent was to bring these only as state law claims.  Clearly, however, to the extent that he asserts such claims under federal law, they are brought under § 1983.

See <u>Edwards v. Jasper County Youth Court</u>, 94 Fed. Appx. 224, 224-225, 2004 WL 764084, 1 (5th Cir. 2004) ("[T]he forum state's personal-injury statute of limitations should be applied to all 42 U.S.C. § 1983 claims. The district court did not err in applying Mississippi's three-year statute of limitations.") (citing <u>Wilson v. Garcia</u>, 471 U.S. 261, 280, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985)); <u>Knight v. Calhoun County, Miss.</u>, 2001 WL 1076001, 1 (5th Cir. 2001) ("[T]here is no federal limitations period for 42 U.S.C. § 1983 actions; because there is no statute of limitations for 42 U.S.C. § 1983 actions, federal courts borrow the general personal injury limitations period of the forum state. The limitations period in Mississippi is three years.") (citing <u>Owens v. Okure</u>, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989)); <u>Busick v. McGinty</u>, No. 95-60473, 1995 WL 725770, 1 (5th Cir. 1995) ("There being no federal statute of limitations for section 1983 actions, the federal courts borrow the forum state's general personal injury limitations period. The Mississippi statute for general personal injury is three years."); <u>Carter v. Epps</u>, No. 4:07CV79-P-B, 2008 WL 623403, 2-3 (N.D. Miss. March 3, 2008) ("'Because there is no statute of limitations for 42 U.S.C. § 1983 actions, federal courts must borrow the general personal injury limitations period of the forum state.' The general personal injury limitations period in Mississippi is three years."). Therefore, to the extent plaintiff is asserting these

claims as federal claims under § 1983, plaintiff's claims were timely brought and are not subject to dismissal on limitations grounds. However, the plaintiff has no cognizable claim under federal law for intentional infliction of emotional distress and that claim will be dismissed for failure to state a claim upon which relief can be granted. See Debrill v. Huber, No. Civ.A.H-04-4854, 2006 WL 14570, 4 (S.D. Tex. Jan. 3, 2006) (observing that "'although emotional damages are available under § 1983, a claim of intentional infliction of emotional distress . . . cannot form the basis of a § 1983 action because there is no constitutionally protected interest at stake'") (quoting Carter v. Jess, 179 F. Supp. 2d 534, 540 (D. Md. 2001)); Voyticky v. Village of Timberlake, Ohio, 412 F. 3d 669, 678 (6th Cir. 2005) ("[I]ntentional infliction of emotional distress, by itself, cannot amount to a constitutional violation. . . . We have not . . . ever held that intentional infliction of emotional distress, by itself, amounts to a cognizable constitutional claim remediable pursuant to 42 U.S.C. § 1983") (cited in Dibrell). Neither does plaintiff have a cognizable § 1983 claim for negligence. See Diaz ex rel. Diaz v. Mayor of Corpus Christi, 121 Fed. Appx. 36, 39, 2005 WL 102996, 3 (5th Cir. 2005) ("Mere negligence, of course, does not give rise to a cognizable constitutional claim under 42 U.S.C. § 1983.") (citing Daniels v. Williams, 474 U.S. 327, 332-36, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). Moreover, while

defendants seek dismissal of plaintiff's federal claim for invasion of privacy, it does not appear to the court that plaintiff has asserted any such claim.  Plaintiff's complaint makes an oblique reference to invasion of privacy; but he has not alleged, or even suggested any basis for a cause of action for invasion of privacy, under state or federal law.

For the reasons given, plaintiff's state law claims will be dismissed, as will his putative federal claim for intentional infliction of emotional distress, negligence, and any arguable claim for invasion of privacy.

Turning to Huff's motion to dismiss on the basis of qualified immunity, the doctrine of qualified immunity protects public officers from suit if their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." Linbrugger v. Abercia, 363 F.3d 537, 540 (5th Cir. 2004) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Issues of qualified immunity are determined by a two-step analysis:  The court must determine first whether plaintiff has alleged a violation of a clearly established constitutional right, and second, whether the officer's conduct was "objectively reasonable in light of clearly established law at the time of the alleged violation." Morris v. Dillard Dept. Stores, Inc., 277 F.3d 743, 753 (5th Cir. 2001) (quoting Chiu v. Plano Indep. Sch. Dist., 260 F.3d 330, 343 (5th Cir. 2001)).  The

Fifth Circuit has divided the first prong of this inquiry into three determinations: "1) whether the plaintiff alleges a deprivation of a constitutional right; 2) whether the right was clearly established at the time of the alleged violation; and 3) whether the defendant actually violated that right." Id. Ultimately, the inquiry is "whether the state of the law [at the time of the violation] gave [defendant] fair warning that [his] alleged treatment of [plaintiff] was unconstitutional." Williams v. Kaufman Cty., 352 F.3d 994, 1003 (5th Cir. 2002).

    The court agrees that Huff is entitled to qualified immunity as to plaintiff's claims for false arrest and imprisonment, and for malicious prosecution. Plaintiff asserts he was arrested in violation of his Fourth Amendment right to be free from unreasonable seizure as he had committed no illegal act to warrant his arrest and as Huff had no probable cause to believe he had committed an offense. He alleges that Huff, "[u]nlawfully and without any authority whatsoever, maliciously and with intent to harass and intimidate and demean the Plaintiff, . . . without probable cause, [arrested plaintiff] and instituted a criminal action against Mike Stuckey." Huff does not dispute that plaintiff has alleged deprivation of his clearly established right to be free from arrest without probable cause, or that the right was clearly established at the time of his arrest. The only dispute is as to whether Huff had probable cause.

12

>    The Fifth Circuit has observed,
>
>    An officer's entitlement to qualified immunity based on probable cause is difficult for a plaintiff to disturb. See Brown v. Lyford, 243 F.3d 185, 190, n.7 (5th Cir. 2001) (holding that "[a] plaintiff must clear a significant hurdle to defeat qualified immunity" and that there "must not even arguably be probable cause for the search and arrest for immunity to be lost" ) (internal quotation omitted). Thus "if officers of reasonable competence could disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized." Gibson v. Rich, 44 F.3d 274, 277 (5th Cir. 1995) (citation omitted).

Morris, 277 F.3d at 753-54.

Huff maintains he had probable cause, or at the very least could reasonably have thought he had probable cause to arrest plaintiff for violation of Mississippi Code Annotated § 97-35-7(1)(a), which provides:

>    (1) Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:
>
>    (a) Move or absent himself and any vehicle or object subject to his control from the immediate vicinity where the request, command or order is given, . . .
>
>    shall be guilty of disorderly conduct, which is made a misdemeanor and, upon conviction thereof, such person or persons shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or imprisonment in the county jail for not more than six (6) months, or by both such fine and imprisonment.

Huff contends he reasonably believed that he had authority to direct plaintiff to move from the side of the highway because

13

plaintiff's location encroached on the highway right-of-way and created a traffic hazard. He points out further that he directed plaintiff to move, and that plaintiff refused and was arrested for his refusal to comply with Huff's order. Indeed, this is undisputed. It is also undisputed that plaintiff was subsequently convicted in justice court of refusing a lawful order or request by a law enforcement officer. Under the circumstances, and particularly given the fact of plaintiff's conviction, the court is compelled to conclude that Huff could reasonably have concluded he had probable cause to arrest plaintiff. This is true, notwithstanding that plaintiff has alleged that Huff's motivation was improper. See Morris, 277 F.3d at 755 ("[B]ecause the test for immunity is solely one of objective reasonableness, any "subjective intent, motive, or even outright animus [is] irrelevant in a determination of qualified immunity based on arguable probable cause to arrest, just as an officer's good intent is irrelevant when he contravenes settled law." Thus, any subjective, even angry, motives on [the officer's] part are immaterial to our determination that he had probable cause to arrest and was consequently entitled to qualified immunity.") (citations omitted).

In addition to his claims for false arrest and imprisonment and malicious prosecution, plaintiff has undertaken to allege a "class of one" equal protection claim. Traditionally, an equal

14

protection claim required that the plaintiff prove that a state actor intentionally discriminated against him because of his membership in a protected class. <u>Nance v. New Orleans and Baton Rouge Steamship Pilots' Ass'n</u>, 174 Fed. Appx. 849, 854, 2006 WL 925532, 4 (5th Cir. 2006) (citing <u>Williams v. Bramer</u>, 180 F.3d 699, 705 (5th Cir. 1999)).  However, in <u>Village of Willowbrook v. Oleck</u>, the Supreme Court held that the Equal Protection Clause gives rise to a claim on behalf of a "class of one" who has not alleged membership in a class:  "Our cases have recognized successful equal protection claims brought by a 'class of one', where the plaintiff [shows] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).  To succeed on such a claim, the plaintiff must show that "standards were applied differently to him than to others <u>similarly situated</u>." <u>Nance</u>, 174 Fed. Appx. at854, 2006 WL 925532, at 5 (citing <u>Bryan v. City of Madison</u>, 213 F.3d 267, 276–77 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1145, 121 S. Ct. 1081, 148 L. Ed. 2d 957 (2001)). "Alternatively, the plaintiff may show that a government policy or procedure was selectively enforced against him," which "requires showing 'the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right'."  <u>Id</u>. (citing <u>Bryan</u>).

Here, plaintiff alleges that defendants intentionally treated him differently from Jeff Stringer, who was similarly situated, with no rational basis for the difference in treatment. According to the complaint,

> Jeff Stringer was selling watermelons alongside the highway just like Mike Stuckey. Jeff Stringer was not harassed, forced to leave the side of the highway or arrested. All of the Defendants were conspiring to remove the Plaintiff from the side of the highway, to prevent him from selling watermelons along the side of the highway and their purpose amounts to "vindictive action, illegitimate animus" and/or "ill will". The Defendants have granted to Jeff Stringer a De-Facto License to sell produce and watermelons alongside the highway and denied Mike Stuckey a license to sell produce or watermelons alongside the highway when there is even no license required. The Defendants' actions were wholly irrational and arbitrary.

In the court's opinion, plaintiff's allegations are probably sufficient to allege a violation of his constitutional right to equal protection. Plaintiff alleges he was intentionally treated differently from Stringer, who was similarly situated (indeed identically situated), that there was no rational basis for the difference in treatment and that the difference in treatment was motivated by ill will. However, the court cannot conclude that this claim was clearly established at the time of the alleged violation in July 2006. Indeed, in an opinion rendered in April 2006, the Fifth Circuit determined that it was "probably not clearly established as required by step one of qualified-immunity analysis . . . whether this 'class of one' jurisprudence applies outside the zoning land use and assessment context, where it is

16

typically employed." Nance, 174 Fed. Appx. at 854, 2006 WL 925532, at 5. See also Warner v. Smith, 2008 WL 1775146, 4 (S.D. Miss. April 15, 2008) (quoting Nance, and holding that defendant was entitled to qualified immunity because at the time of the alleged violation, it was not clearly established that the Fifth Circuit Court had extended the "class of one" jurisprudence to the employment context, and indeed, it was not clearly established that the "class of one" jurisprudence applied outside the zoning context). It follows that Huff is also entitled to qualified immunity as to plaintiff's equal protection claim.

Based on the foregoing, it is ordered that the joint motion of defendants Mississippi Transportation Commission and Willie Huff is granted as to all plaintiff's state law claims, and as to plaintiff's ostensible federal claims for intentional infliction of emotional distress, invasion of privacy and negligence; it is denied as to the remaining federal claims. It is further ordered that Willie Huff's motion to dismiss plaintiff's individual capacity claims against him on the basis of qualified immunity is granted.

SO ORDERED this 24th day of April, 2008.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE